Nick Healey (WY # 6-3458)
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
(303) 749-7200
nick.healey@huschblackwell.com

*Attorney for North Lincoln County Hospital District d/b/a Star Valley Health*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **North Lincoln County Hospital District d/b/a Star Valley Health** ) ) ) | Case No. _____ |
| Plaintiff, ) ) | |
| v. ) ) | |
| **Change Healthcare Solutions, LLC** f ) ) | |
| Defendant. ) ) | **COMPLAINT** |
| ) | **JURY TRIAL REQUESTED** |
| ) ) ) ) ) ) ) ) | |

Plaintiff North Lincoln County Hospital District d/b/a Star Valley Health ("SVH"), through undersigned counsel, hereby files its Complaint and states as follows in support of its Complaint and Jury demand ("Complaint") against Defendant Change Healthcare Solutions, LLC ("CHC"), with Star Valley and CHC referred to individually each as a "Party" and collectively as the "Parties"):

1

## INTRODUCTION

1.     SVH brings this diversity contract action for damages arising out of CHC's multiple and continuing breaches of the Parties' Master Relationship Agreement ("MRA") and associated Schedules and Solution Orders. A true and correct copy of the Master Relationship Agreement is attached as **Exhibit 1**.

2.     SVH engaged CHC to perform certain services including, relevant to this Complaint, managing SVH's billing and accounts receivable and submitting claims to payers.

3.     CHC essentially took over SVH's billing and accounts functions. It was responsible for ensuring claims were timely submitted to insurance.

4.     CHC repeatedly failed to timely submit claims to payers in line with its obligations in the MRA and associated Schedules and Solution Orders.

5.      CHC has also failed to timely submit claims to payers related to SVH's provision of emergency medical services ("EMS").

6.     As a direct and proximate result of these material breaches, SVH has sustained—and will likely continue to sustain—damages in excess of $2.5 million.

## PARTIES

7.     Plaintiff North Lincoln County Hospital District d/b/a Star Valley Health is a Wyoming special hospital district in Afton, Wyoming.

8.     Defendant CHC is a Delaware corporation with its principal place of business in Nashville, Tennessee.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the amount of $75,000 and there is complete diversity between the parties.

10.     Venue of this action in the District of Wyoming is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions that give rise to SVH's claims, including the execution of the MRA, occurred in Wyoming.

## THE PARTIES' CONTRACTUAL RELATIONSHIP

11.     SVH operates a critical access hospital and nursing facility in Afton, Wyoming.

12.     Relevant to this Complaint, SVH retained CHC to handle its billing services. Under this arrangement, CHC would serve as the intermediary and file claims for services rendered by SVH to its patients to insurance payers.

13.     On or about November 22, 2022, SVH and CHC entered into Contract No. MRA202310063744, the MRA.

14.     The MRA is a form contract. SVH attempted to negotiate the MRA, providing CHC a redline with proposed changes. However, CHC informed SVH that all of SVH's proposed edits were rejected.

15.     CHC did not provide SVH any way to edit or comment on the MRA to change the terms of the MRA or to reserve its rights. Instead, the MRA was presented on a "take or leave it" basis.

16.     The MRA contained a "███████████████████" where CHC agreed to "███████████████████████████████████████████" Ex. 1 § 11.

17.     The MRA also incorporated " ████████████████████████████████
████████████████ " executed between the Parties. Ex. 1 at p. 1.

18.     On or about March 30, 2023, the Parties executed the "Revenue Management
Services Solution Order" ("RMS"). The RMS contained three statements of work that outlined
CHC's responsibilities and obligations.

19.     A true and correct copy of the RMS is attached hereto as **Exhibit 2**.  The RMS is
incorporated into the MRA.

20.     Statement of Work #1 (SOW #1), titled "Insurance Accounts Receivable Services,"
provided broadly that " ██████████████████████████████████████████████
████████████████████████████████████████████████████ "

21.     More specifically, SOW #1 unambiguously required CHC to:

    a.      " ████████████████████████████████████████████████████
            ██████████████████

    b.      ████████████████████████████████████████████████████

    c.      ████████████████████████████████████████████████████

    d.      ████████████████████████████████████████████████████

    e.      ████████████████████████████████████████████████████
            ████████████████████████████████████████████████████
            ████████████████████████████████████████████████████

    f.      ████████████████████████████████████████████████████

    g.      ████████████████████████████████████████████████████



h.

i.

j.

k.

l.

m.

n.

22.    SOW #1 also required SVH to " ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉" Ex. 2 at p. 7.

23.    Statement of Work #2 (SOW #2), titled "Self Pay Accounts Receivable Services,"

provided that " ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉"

24.    More specifically, SOW #2 unambiguously required CHC to:



a.

b.

c.

d.



e. ▮▮▮▮▮▮▮▮▮▮▮▮

f. ▮▮▮▮▮▮▮▮▮▮▮▮

g. ▮▮▮▮▮▮▮▮▮▮▮▮

h. ▮▮▮▮▮▮▮▮▮▮▮▮

i. ▮▮▮▮▮▮▮▮▮▮▮▮

j. ▮▮▮▮▮▮▮▮▮▮▮▮

k. ▮▮▮▮▮▮▮▮▮▮▮▮

25.    SOW #2 also required SVH to "▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮" Ex. 2 at p. 9.

26.    Statement of Work #3 (SOW #3), titled "Denial Services," provided that "▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮" Ex. 2 at p. 12.

27.    More specifically, SOW #3 unambiguously required CHC to:

a.    "▮▮▮▮▮▮▮▮▮▮

b.    ▮▮▮▮▮▮▮▮▮▮

6

c.



d.

e.

f.

g.

h.

i.

j.

k.

28.    SOW #3 also required SVH to "███████████████████████████████

███████████████" Ex. 2 at p. 12.

29.    Therefore, under the "███████████████████" in the MRA and the specific

obligations in SOW #1, SOW #2, and SOW #3 to the RMS, CHC was responsible for providing

timely billing services to SVH, including submission of claims with insurance payers.

30.     Specifically, CHC was responsible for submitting insurance claims on time consistent with the obligations set forth in the MRA and SOWs, as well as managing follow-up and collection services.

## CHC'S BREACH OF THE MRA RELATED TO TIMELY FILING OBLIGATIONS

31.     CHC routinely breached these obligations, resulting in multiple, sustained failures to timely file over $3.7 million in claims with insurance payers.

32.     When CHC took over the billing cycle for SVH, it used the billing software Meditech and MPM.

33.     Under the MRA and the specific obligations in SOWs #1-#3, CHC was responsible for submitting claims on time and managing follow-up and collection services.

34.     CHC failed to timely follow up and facilitate collection of payment for claims filed using the Meditech and MPM software. As a result, SVH suffered over $2 million in timely filing losses attributable to claims that should have been submitted through the Meditech and MPM software.

35.     On or around July 2023, CHC switched to the Epic billing software, which the MRA required it to use to timely file and follow up with certain claims.

36.     Upon information and belief, CHC was experiencing staffing issues and was unable to adequately prepare for the implementation of the Epic billing software. These staffing issues caused a significant backlog in claims processing.

37.     Upon information and belief, CHC failed to timely file and follow up to facilitate collection of payments for SVH claims filed using the Epic software, resulting in at least $2.1 million in losses.

38.     These failures to file were not the fault of SVH; rather, SVH fully performed under the MRA by paying CHC's invoices each month until it discovered CHC's breach.

39.     What's more, SVH made repeated efforts to ensure that insurance claims were being filed in a timely manner. SVH had regular calls with CHC, meeting weekly for months, during which SVH repeatedly asked about timely filing of claims.

40.     CHC was well-aware of the timely filing issue. On information and belief, a CHC employee alerted upper-level management of the backlog of claims that had not been filed, yet CHC failed to provide additional resources to handle SVH's claims.

41.     CHC's failure to remedy its staffing issues contributed to its untimely filing of claims and caused  SVH damages.

## CHC AND SVH TERMINATE THE MRA

42.     SVH and CHC decided to terminate the MRA on June 3, 2024. Under the Mutual Termination Agreement ("MTA"), CHC agreed to continue to provide services to SVH for a period of time (called the "Workout Period"). Specifically, CHC agreed to continue to perform services for SOW #1 and SOW #4 through May 1, 2024.

43.     At the end of the Workout Period, SVH agreed to discontinue all use of the CHC services under the Agreement and destroy all CHC software.

44.     A true and correct copy of the MTA is attached as **Exhibit 3.**

45.     During the Workout Period, CHC continued to fail to timely submit claims in violation of the MRA, the SOWs, and the subsequent MTA.

46.     As a result, on October 31, 2024, SVH sent CHC a demand for payment due to CHC's failure to timely file over $3.7 million in claims with insurance payers (the "October Demand").

47.     A true and correct copy of the October Demand is attached as **Exhibit 4**.

48.     In the October Demand, SVH outlined CHC's responsibilities under the MRA and RMS, including CHC's obligation to perform all Professional Services in a professional manner under Section 11 of the MRA and to provide billing services under Section 2 of SOW #1.

49.     As part of the October Demand, SVH attached a document called "Meditech Timely Filing Losses," which detailed the amount of losses caused by CHC's failure to timely file. *See* Attachment A-1 to Exhibit 4.

50.     According to the Meditech Timely Filing Losses, CHC failed to timely file over 3,000 claims, amounting to over $2 million in sustained losses to SVH.

51.     To this end, CHC did not comply with its obligations under the MRA and associated documents.

52.     Conversely, SVH complied with the terms of the MRA. Over the term of the MRA, SVH paid CHC's invoices in accordance with the payment terms of the MRA.

53.     It was only in February 2024, *after* SVH learned that CHC was in breach of the MRA and RMS, that SVH began to withhold payments on CHC invoices.

54.     Notwithstanding, in the October Demand, as a showing of good faith, SVH agreed to deduct the amount of outstanding fees from CHC invoices from the total amount of damages SVH had suffered.

55.     Therefore, under the October Demand, SVH requested payment in the amount of $1,633,821.

56.     But CHC failed to cure the timely filing deficiencies. So, on December 2, SVH sent another demand, reiterating CHC's obligations under the MRA and requesting payment.

57.     CHC failed to remedy its breaches in response to SVH's Demands.

58.     As a last-ditch effort, to avoid litigation, SVH sent a Demand for Mediation to CHC on December 17, 2024. A true and correct copy of the December 17 Mediation Demand is attached as **Exhibit 5**.

59.     Despite SVH's repeated efforts, CHC has declined to mediate this dispute and has failed to cure its material breaches of the MRA and associated documents.

## CHC BREACHED ITS EMS RELATED OBLIGATIONS

60.     Additionally, CHC failed to provide claims data for EMS in violation of the MRA and SOW #4. A true and correct copy of SOW #4 is attached as **Exhibit 6**.

61.     Statement of Work #4, titled "TES Billing and Coding Services for Emergency and non-Emergency transport," governed accounts receivable for EMS.

62.     SOW #4 unambiguously required CHC to, among other things, "███████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████" Ex. 6 at p. 2.

63.     SOW #4, like SOW #1, required CHC to perform services in a "████████████ ████████" Ex. 6 at p. 2.

64.     After execution of the MTA and the Workout Period, on September 27, 2024, SVH reached out to Optum, the company that acquired CHC in 2022, and requested the "Final A/R File" for EMS.

65.     It was necessary that SVH receive the EMS file to determine whether CHC had timely filed the EMS claims.

66.     If CHC failed to timely file these claims, SVH had a limited amount of time to mitigate its damages under the MRA.

67.    A true and correct copy of the email exchange between SVH and Optum representatives is attached as **Exhibit 7**.

68.    On October 7, 2024, representative from Optum replied and stated that Optum was "following up internally to obtain an update" and would update by the end of the week. Ex. 7.

69.    SVH reached out again on October 28, 2024 requesting an update.

70.    Optum responded on November 1, 2024, stating that Optum was "coordinating with [] Leadership and Finance" to obtain to the file.

71.    SVH once again reached out on November 15, 2024. CHC responded on November 18, 2024 that SVH's request had been "escalated."

72.    On November 20, 2024, SVH notified CHC that patients were receiving statements for EMS that were billed by Optum—sometimes almost a year after the date of service. SVH emphasized to CHC that it was "imperative more now than [sic] ever that [SVH] receive the final file" to understand the EMS claims data.

73.    Optum responded on November 21, 2024 that these statements were sent to patients inadvertently and the mistake would be remedied. Optum still did not provide the requested EMS statements.

74.    SVH reached out again to individuals at Optum on December 26 requesting another update on the EMS file. CHC responded that it would inquire on the status of the file.

75.    SVH reached out again on  February 7, 2025, requesting another update on the EMS file.

76.    SVH reached out again on March 31, 2025, requesting another update on the EMS file.

77.    On April 7, 2025, over six months after the initial request and eleven months after the discontinuation of services under SOW #4, CHC responded and stated—for the first time—that the information was being withheld until Star Valley paid its outstanding invoices.

78.    Star Valley responded on May 30, 2025, pointing out that CHC had reassured SVH numerous times that it was working to obtain the EMS inventory file.

79.    CHC's timely filing losses from EMS have resulted in over $1.1 million in additional losses to SVH.

80.    SVH is likely to uncover even more claims that will be considered untimely. And, due to the delay, SVH will be unable to mitigate its damages.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

81.    SVH restates and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

82.    The parties entered into the MRA, the RMS, and accompanying Statements of Work, which provided obligations for both SVH and CHC.

83.    SVH fully performed its obligations under the MRA: it paid CHC's invoices in exchange for CHC's services.

84.    CHC breached its duties under the MRA when it, among other things:

    a.    failed to timely submit claims to payers in line with its obligations in the MRA and associated documents (MRA § 11; RMS - SOW #1-#3);

    b.    misrepresented to SVH that it was timely submitting claims to insurers; and

    c.    failed to provide EMS statements so that SVH can assess whether it has sustained further timely filing losses (MRA SOW #4).

85.    As a result of CHC's material breaches of the Subcontract, SVH has incurred and continues to incur damages in an amount to be proved at trial.

## SECOND CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing

86.    SVH restates and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

87.    The parties entered into the MRA, the RMS, and accompanying Statements of Work, which provided obligations for both SVH and CHC.

88.    Every contract, including the MRA, contains an implied duty of good faith and fair dealing.

89.    Under Section 11 of the MRA, the RMS, and the relevant SOWs, CHC agreed to provide billing services for SVH in a timely and diligent manner.

90.    Despite this, CHC repeatedly failed to timely submit claims to insurance payors.

91.    CHC's failure to submit claims in a timely manner breached the implied covenant of good faith and fair dealing and constitutes a material breach of the MRA.

92.    As a direct and proximate result of CHC's bad faith, SVH has incurred and continues to incur damages in an amount to be proved at trial.

## THIRD CLAIM FOR RELIEF
### Negligent Misrepresentation

93.    SVH restates and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

94.    The parties entered into the MRA, the RMS, and accompanying Statements of Work, which provided obligations for both SVH and CHC.

95.    Among these obligations was CHC's duty to provide timely billing services to SVH, including submission of claims with insurance payers.

96.     During performance of the MRA, CHC switched to the Epic billing software. At this time, CHC was experiencing staffing issues and was unable to adequately prepare for the implementation of the new software.

97.     CHC knew or should have known that the staffing issues would cause a significant delay in claims processing.

98.     Despite this, and at odds with CHC's contractual obligations, CHC failed to disclose these issues to SVH. This resulted in a large number of claims that were not filed in a timely manner

99.     SVH reasonably relied on CHC's omission of material facts , including staffing issues which contributed to its inability to submit claims in a timely matter, in continuing performance of the MRA and paid all invoices until February 2024.

100.    CHC should have reasonably foreseen that SVH was likely to rely on this omission of material facts.

101.    SVH has been damaged as a direct and proximate result of CHC's negligent misrepresentation by omission, in an amount to be proven at trial.

## **REQUEST FOR RELIEF**

SVH respectfully requests the following relief:

A.     That judgment be entered in its favor and against CHC for all damages which SVH is entitled under the MRA in an amount to be proved at trial;

B.     An award for costs and attorneys' fees, as allowed by law;

C.     Pre- and post-judgment interest, inclusive of Prompt Payment Act Interest per 48 CFR 52.232-27; and

D.     Such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, SVH demands a trial by jury on all issues so triable.

DATED this 30th day of September, 2025.

Respectfully submitted,

By: */s/ Nick Healey*
Nick Healey (WY # 6-3458)
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
(303) 749-7200
nick.healey@huschblackwell.com

Attorney for Plaintiff North Lincoln County Hospital
District d/b/a Star Valley Health

# Exhibit 1
## Subject of Motion to Restrict/Seal

# Exhibit 2
## Subject of Motion to Restrict/Seal

# Exhibit 3
## Subject of Motion to Restrict/Seal

# Exhibit 4
## Subject of Motion to Restrict/Seal

# Exhibit 5
## Subject of Motion to Restrict/Seal

# Exhibit 6
## Subject of Motion to Restrict/Seal

# Exhibit 7
## Subject of Motion to Restrict/Seal